No. 98-703

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 12

298 Mont. 52

993 P.2d 688

CARL and BARBARA PEARSON, husband and wife, and

RICHARD and ALDE FESKANIN, husband and wife,

Plaintiffs and Respondents,

v.

VIRGINIA CITY RANCHES ASSOCIATION, MANFRED

MANFRED NEW, EDWARD NEW, EUGENE & PAULINE BOARDAS,

HUGH & HILDEGARD WEBSTER, RICHARD McGUIRE, JANET &

JOHN DOCHNAL, HARKER & MARIAN DALE, CHRIS & KATHERINE

JOHNSON, MARLENE FLYNN, AYRES & ROSEMARY BAKER,

NEVILLE BOOTH, and KEVIN & DIANN HOKANSON,

Defendants and Appellants.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Madison,

The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Terry F. Schaplow, P.C., Attorney at Law; Bozeman, Montana

Jeannette E. Berry, Attorney at Law; Bozeman, Montana

For Respondents:

Michael J. Lilly, The Berg Law Firm; Bozeman, Montana

Submitted on Briefs: September 10, 1999

Decided: January 20, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1.The Plaintiffs, Carl and Barbara Pearson and Richard and Alde Feskanin, commenced this action for declaratory judgment and injunctive relief in the District Court for the Fifth Judicial District in Madison County. They sought a determination that a bridle path easement existed for the use of all owners in the Virginia City Ranches Subdivision and an injunction enjoining the individual Defendants from obstructing the bridle path easement. The District Court awarded the Plaintiffs partial summary judgment, finding that the filing of the plat for the Virginia City Ranches subdivision created a valid bridle path easement and that with respect to certain Defendants' counterclaims of adverse possession, the easement had not been extinguished. The Defendants appeal from that judgment. We affirm the judgment of the District Court.

¶2.Defendants raise six issues on appeal:

¶3. Did the District Court err when it concluded that the Defendants' deeds and the final Plat filed on May 1, 1973 created a valid bridle path easement?

¶4. Did the District Court err when it concluded that Montana's environmental laws were not material to its decision regarding the existence of a valid bridle path easement?

¶5. Did the District Court err when it concluded that the Board of Directors of the Virginia City Ranches Association had no authority to abandon the bridle path easement?

¶6. Did the District Court err when it concluded that the bridle path easement as it crosses the Bischoff, Eldridge, and Bordas lots had not been extinguished by adverse possession?

¶7. Did the District Court err when it concluded that the final plat recorded on May 1, 1973, was valid?

¶8. Were the Plaintiffs estopped from claiming the existence of the bridle path easement?

## FACTUAL BACKGROUND

¶9.Virginia City Ranches is a subdivision located in Madison County, Montana. The Plaintiffs, Carl and Barbara Pearson and Richard and Alde Feskanin, own lots within the subdivision. The individual Defendants also own lots within the subdivision. Defendant Virginia City Ranches Association (hereinafter Association) is a Montana corporation, organized for the purpose of performing the powers and duties of the Association as set forth in its bylaws and articles of incorporation.

¶10.The lots within the Virginia City Ranches subdivision were created by the filing of a final plat filed on May 1, 1973. Prior to that date, the developers had filed two previous plats on March 20 and on April 3, 1973. The first plat contained no reference to a bridle path easement. However, the second plat filed on April 3, 1973 and the final plat filed on May 1, 1973, both contained references to a bridle path easement crossing the subdivision. The Plaintiffs and the individual Defendants all took title to their lots in the subdivision by a standard form warranty deed, each of which referred to the final May 1, 1973 plat.

¶11.On July 6, 1982, the developer of the Virginia City Ranches subdivision, Shining Mountains North, executed an Assignment and Deed which transferred to the Association "[a]ll powers, rights, and authority to administer all matters regarding . . . the overseeing and maintenance of all common areas . . . ." The Assignment and Deed referred to the final May 1, 1973 plat and included the bridle path easements in the description of the common areas.

¶12.On July 6, 1996, the annual meeting of the Virginia City Ranches Association was held. A motion was made to remove all references to the bridle path easement from all plats of record for the Virginia City Ranches subdivision. A majority of the lot holders voted to remove references to the bridle path from the plat. As a result, the Association recorded a document with the Clerk and Recorder of Madison County entitled "Notice of Corporate Action Taken Regarding Bridle Path Shown on Virginia City Ranches Subdivision Plat," which detailed the Association's action.

¶13.At no time since the inception of the Virginia City Ranches subdivision has a bridle path actually been constructed on the bridle path easement. To the contrary, over the years, several obstructions, which to some extent, encroach upon the bridle path easement, have been built by various lot owners, including some of the individual Defendants. Specifically, the Defendants, Eugene and Pauline K. Bordas, bought a lot in 1988, on which the previous owner had built a fence across the bridle path in 1985; the Defendant, Manfred E. New, built a fence across the bridle path in 1985 and a barn which encroached upon the bridle path in 1989; the Defendants, Hugh and Hildegard Webster, built a pond blocking the bridle path in 1986; and Defendant, Richard McGuire, built a pond and a garden encroaching upon the bridle path in 1979.

## STANDARD OF REVIEW

¶14.Our standard of review on appeal from summary judgment orders is de novo. *See Motarie v. Northern Montana Joint Refuse Disposal District* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M.R.Civ.P., which provides that summary judgment is only appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.

## ISSUE 1

¶15.Did the District Court err when it concluded that the Defendants' deeds and the final plat filed on May 1, 1973 created a valid bridle path easement?

¶16.The Defendants contend that the District Court erred when it concluded that based upon the final plat for the Virginia City Ranches subdivision, filed May 1, 1973, and the Defendants' deeds, there was a valid easement created by reservation for a bridal path. The Defendants argue that rather than relying on the language in the deeds and the plat, the District Court was required to focus on the intent of the parties. They assert that later actions by the developers of the Virginia City Ranches subdivision established that they did not intend to create a bridle path easement.

¶17.Defendants' first assertion is that an express easement by reservation was not created by the record documents in this case. However, the final plat filed May 1, 1973, in Plat Book 4, pages 82-84, records of Madison County, Montana, clearly depicts and labels the bridle path easement. All of the Defendants' deeds specifically refer to the final plat and include the language "subject to easements and restrictive covenants and reservations of record."

¶18.In *Tungsten Holdings, Inc. v. Parker* (1997), 282 Mont. 387, 390, 938 P.2d 641, 642, we held that an easement by reservation arises from the written document of conveyance. Deeds which refer to plats are deemed to convey all easements which are established by the recording of the plat. *Tungsten Holdings, Inc.*, 282 Mont. at 390, 938 P.2d at 642.

¶19.In *Bache v. Owens* (1994), 267 Mont. 279, 285, 883 P.2d 817, 821, we stated the following:

[T]he idea that a map or plat incorporated into an instrument of conveyance can establish an easement predates the definition of "plat" in § 76-3-103(9), MCA [of the Montana

Subdivision and Platting Act]. In *Majers v. Shining Mountains* (1986), 219 Mont. 366, 711 P.2d 1375, the documents at issue were filed before the effective date of the Montana Subdivision and Platting Act. In that case, we cited with approval the following language from *Ute Park Summer Homes Ass'n v. Maxwell Land Gr. Co.* (1967), 77 N.M. 730, 427 P.2d 249, 253:

[W]here land is sold with reference to a map or plat showing a park or like open area, the purchaser acquires a private right, generally referred to as an easement, that such area shall be used in the manner designated.

¶20.Additionally, in *Halverson v. Turner* (1994), 268 Mont. 168, 172-73, 885 P.2d 1285, 1288, we expressed the following:

An easement by reservation must arise from the written documents of conveyance. In determining the existence of an easement by reservation in documents of conveyance, it is necessary that the grantee of the property being burdened by the servitude have knowledge of its use or its necessity. In this case, the reference in the quitclaim deed to . . . [the plat] gave notice to Shirley Turner that the property was being conveyed pursuant to a particular recorded document. It also put her on "inquiry notice" of the easement . . . . Knowledge of the existence of a claim will be imputed to a party who has sufficient information to put it on inquiry notice of that claim.

¶21.Clearly, this Court's holdings with respect to an express easement by reservation establish that such an easement arises when the purchaser's deed refers to the plat where the easement is clearly depicted.

¶22.Defendants' second contention with regard to the validity of the bridle path easement is that the parties' intent, rather than their deeds and the plat language is controlling, and that, therefore, the District Court erred when it relied solely on the deeds and plat language. Defendants rely on *White v. Landerdahl* (1981), 191 Mont. 554, 625 P.2d 1145, as support for their position, as expressed in their brief, that "[a] court cannot create an easement where the parties did not so intend." However, in *White*, this Court was construing an implied easement, not an expressed easement. In *White,* we stated: "[a] court, however, may not create as a matter of law, an *implied easement* where the facts indicate that the parties did not intend that an easement be created." *White,* 191 Mont. at 558, 625 P.2d at 1147 (emphasis added).

¶23.Implied easements are creatures of equity and the intent of the parties is implicit in the creation of such an easement. *See White*, 191 Mont. at 558, 625 P.2d at 1147. To the contrary, expressed easements by reservation are created by the documents of conveyance and the record. *See Tungsten Holdings, Inc.*, 282 Mont. at 390, 938 P.2d at 642.

¶24.Section 28-2-905, MCA, sets forth when extrinsic evidence concerning a written agreement may be considered:

(1) Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:

(a) when a mistake or imperfection of the writing is put in issue by the pleadings;

(b) when the validity of the agreement is the fact in dispute.

(2) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as described in 1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud.

(3) The term "agreement", for the purposes of this section, includes deeds and wills as well as contracts between parties.

¶25.Moreover, in *City of Missoula v. Mix* (1950), 123 Mont. 365, 372, 214 P.2d 212, 216, we held that "[w]here the language of a reservation in a grant is clear, certain and unambiguous, it must be given effect as written. The court may not defeat or destroy such right by rewriting a conveyance." In *City of Missoula*, we concluded that the language used in the reservation, when read in connection with the whole instrument, "manifests the intention of the grantors in distinct and intelligent terms. Such language needs no interpretation." *City of Missoula*, 123 Mont. at 372, 214 P.2d at 215.

¶26.This Court's holdings with respect to an expressed easement by reservation establish that an easement arises when a purchaser's deed refers to a plat where an easement is depicted and labeled. In this case, the intent of the parties to create a bridle path easement was manifested through the language in their deeds and the plat. Accordingly, extrinsic evidence regarding the intent of the parties is inadmissible.

¶27.Therefore, we conclude that the District Court did not err when it found a valid easement for a bridal path based upon the final plat and the Defendants' deeds which referred to that plat.

## ISSUE 2

¶28.Did the District Court err when it concluded that Montana's environmental laws were not material to its decision regarding the existence of a valid bridle path easement?

¶29.The District Court concluded that because a bridle path has not yet been constructed on the bridle path easement, the issue of whether, upon construction, the path will violate Montana's environmental or pollution laws requires speculation and is, therefore, immaterial to whether the easement was validly created in the first instance. The District Court was correct.

¶30.The issue of whether a bridle path, if constructed, will violate Montana's environmental or pollution laws is not relevant to the issue of whether the Defendants' deeds and the final plat created a valid bridle path easement. Additionally, at this point, no bridle path has been constructed, nor has construction of a bridal path been proposed. Accordingly, this issue is not ripe for judicial determination. We therefore affirm the District Court's refusal to address whether construction of a bridal path would violate Montana's environmental and pollution laws.

## ISSUE 3

¶31.Did the District Court err when it concluded that the Board of Directors of the Virginia City Ranches Association had no authority to abandon the bridle path easement?

¶32.Defendants assert that if a valid bridle path existed, it was extinguished by legal action of the Board of Directors of the Virginia City Ranches Association. Defendants contend that the successful motion at the July 6, 1996 Virginia City Ranches Association annual meeting, to remove the reference to, and any indication of the bridle path easement, effectively extinguished the easement. Defendants' bases for the Association's authority to extinguish the bridle path easement are: an Assignment and Deed dated July 6, 1982, in which the original developers assigned and conveyed to the Association various interests in real property, including responsibility for the common area known as the bridle path easement; and the Association's Articles of Incorporation which specifically authorize the

Association to "deal with real property" and "to dispose of all or any part of its property and assets."

¶33.The District Court found that the Association did not own title to the bridle path easement. As a result, the District Court concluded that the Association's "action and filed Notice could not effectively terminate the easement without the consent and/or release of all lot owners who own the lots to which the easement is appurtenant."

¶34.The Assignment and Deed from which the Association concludes that it acquired ownership of the bridle path easement, provides:

[T]ransfer, set over and assign, give, grant and convey unto Virginia City Ranches Association . . . the following interests in real property, to-wit:

All powers, rights and authority to administer all matters regarding . . . the overseeing and maintenance of all common areas . . . all as shown on plat of said subdivision.

Said common areas being described as including but not limited to the following . . . Bridle Path easements.

¶35.Additionally, the Association's Articles of Incorporation provide:

The Corporation shall have the power:

C. To purchase, take, receive, lease, take by gift, devise or bequest, or otherwise acquire, own, hold, improve, use and otherwise deal in and with real or personal property, or any interest therein, wherever situated.

D. To sell, convey, mortgage, pledge, lease, exchange, transfer, and otherwise dispose of all or any part of its property and assets.

¶36.Clearly, neither the Assignment and Deed, nor the Association's Articles of Incorporation, enable the Association to extinguish the bridle path easement. The Assignment and Deed transferred to the Association the right to oversee and maintain the bridle path easement, it did not transfer title to the easement. The Association's Articles of Incorporation empower the Association to "dispose of all or any part of *its property*." (Emphasis added.) The bridle path easement is not property of the Association and therefore, the Association had no right to extinguish the easement.

¶37.Because the Association did not own the easement, we conclude that the Association's action extinguishing the easement was invalid. Accordingly, we further conclude that the District Court did not err when it held that the corporate action taken by the Board of Directors of the Virginia City Ranches Association that abandoned the bridle path easement was invalid.

## ISSUE 4

¶38.Did the District Court err when it concluded that the bridle path easement as it crosses the Bischoff, Eldridge, and Bordas lots had not been extinguished by adverse possession?

¶39.Defendants contend that the District Court erred when it failed to hold that there were genuine issues of material fact regarding whether the easement had been adversely possessed on the Bischoff and Eldrige lots. The District Court did hold that with regard to the New, Webster, and McGuire lots, there were factual issues regarding adverse possession. The Defendants Bordas, also contend that the District Court erred when it concluded that the bridle path easement on their lot had not been extinguished by adverse possession.

## Bischoff and Eldridge lots

¶40.With respect to the Bischoff and Eldridge lots, a review of the record reveals that neither the Bischoffs nor the Eldridges are named as individual Defendants in this action. On the other hand, New, Webster, McGuire, and Bordas were all named as individual Defendants in the action and accordingly it was their claims of adverse possession which the District Court discussed. The Plaintiffs' Amended Complaint for Declaratory Judgment and Injunctive Relief requests the District Court to grant an injunction "permanently enjoining the Individual Defendants from blocking, obstructing, or otherwise encroaching upon the bridle path easement . . . ."

¶41.In *Kessinger v. Matulevich* (1996), 278 Mont. 450, 460, 925 P.2d 864, 870, we held that a person who is not a party to an action, cannot be a party to the judgment. In *Kessinger*, we stated the following:

[I]t is a fundamental principle of our jurisprudence that it is only against a party to the action that a judgment can be taken and that the judgment is not binding against a stranger

to the action.

*Kessinger, 278 Mont. at 460, 925 P.2d at 870. Furthermore, § 25-9-201, MCA provides:*

Subject to the provisions of Rule 54(b) M.R.Civ.P., judgment may be given for or against one or more of several plaintiffs and for or against one or more of several defendants, and it may, when the justice of the case requires, determine the ultimate rights of the parties on each side as between themselves.

¶42. Because the Bischoffs and the Eldridges are not named as individual Defendants, we conclude that the Plaintiffs had no right to injunctive relief against them. Conversely, we conclude that neither, Defendant Virginia City Ranches Association, nor any of the individual Defendants may assert a claim of adverse possession on their behalf. Although Bischoff and Eldridge have both constructed obstructions to the bridle path easement on their lots, they were not parties to this lawsuit, and therefore no judgment may be entered for or against them.

¶43. The District Court's Partial Summary Judgment Order and Memorandum did not specifically mention that, because the Bischoffs and Eldridges were not parties in this lawsuit, it had no authority to effect their interests. It simply did not address their interests. However, we conclude that the District Court arrived at the correct result when it did not adjudicate the interests of the Bischoffs or the Eldridges.

## Bordas Lot

¶44. The Defendants, Eugene and Pauline Bordas assert that the District Court erred when it concluded that the bridle path easement had not been extinguished by adverse possession on their lot. They argue that because they and their predecessor in interest have maintained a fence which denies access to the bridle path since 1985, have paid all taxes on the property for over five years, and have maintained the riparian quality of Gooseberry Creek on their property, that they have satisfied the elements for adverse possession, thereby extinguishing the bridle path easement on their property.

¶45. The Plaintiffs do not dispute the factual assertions by the Bordases. However, the Plaintiffs contend that based on our decision in *Halverson v. Turner* (1994), 268 Mont. 168, 885 P.2d 1285, the Bordases did not satisfy the requirements to extinguish an express easement by reservation.

¶46.Extinguishment of an easement through adverse use by the owner of the servient tenement is accomplished in the same manner as acquisition of title by adverse possession and acquisition of an easement by prescription: open, notorious, exclusive, adverse, continuous and uninterrupted use for the five-year statutory period. *Halverson,* 268 Mont. at 174, 885 P.2d at 1290.

¶47.In *Halverson* we stated the following:

A permanent easement by express reservation which is not used is not lost by prescription during a period of nonuse no matter how long it remains unused unless there is adverse use which is clearly inconsistent with the dominant tenement's future use of the easement. Moreover, the owner of the dominant tenement is not required to make use of the easement as a condition to retaining his interest in the easement. Thus, where an easement has been created but no occasion has arisen for its use, *the owner of the servient tenement may fence the land and this will not be deemed adverse until such time as the need for the right-of-way arises and the owner of the dominant tenement demands that the easement be opened and the servient tenement owner refuses to do so.*

*Halverson, 268 Mont. at 175, 885 P.2d at 1290 (emphasis added) (citations omitted).*

¶48.The Bordases argue that *Halverson* is distinguishable because in *Halverson* the easement was for a roadway, whereas in this case, the easement is for horseback riding, a recreational use. However, the Bordases do not cite any authority for their position that an expressly reserved easement may be extinguished by fencing the easement when the easement is for recreational purposes, as opposed to an easement for road access.

¶49.We decline to limit our holding in *Halverson* to an expressly reserved easement for road access purposes as opposed to recreational purposes. Implicit within an express easement by reservation is the idea that the easement is reserved until such time the easement's use is requested. As we held in *Halverson*, fencing an expressly reserved easement is not an adverse use which is clearly inconsistent with the dominant tenement's future use of the easement. We did not then, nor do we now, limit our holding in *Halverson* to road access. The fence built by the Bordases is no more inconsistent with the use of the easement as a bridle path, than with use as a road. Neither is the fact that the Bordases maintained the riparian quality of the easement on their lot sufficient to establish adverse possession.

¶50.Accordingly, we conclude that our holding in *Halverson* applies to this case, and that obstructing the bridal path by erection of a fence was not adverse until such time as the owners of the dominant tenements demanded that the obstruction be removed and the Bordases refused to do so. Because the first demand that the easement be made available for use occurred at the 1995 annual Association meeting, the earliest the five-year period for an adverse possession claim could have begun to run was 1995. The five-year period had not been satisfied by the Bordases at the time this litigation was commenced. As a result, we conclude that the District Court did not err when it held that the bridle path easement on the Bordases lot had not been extinguished by adverse possession.

ISSUE 5

¶51.Did the District Court err when it concluded that the final plat recorded on May 1, 1973, was valid?

¶52.Defendants assert that the original developers acted illegally in amending the original plat of March 20, 1973, without the landowners' consent. The District Court concluded that:

Defendants' allegations are conclusory statements unsupported by admissible evidence of any kind. . . . Moreover, all of the Defendants in this action, and presumably their predecessors in interest, purchased their lots after the plat was amended on May 1, 1973, because all of the deeds describe their lots by reference to that final amended plat.

¶53.A review of the record reveals no admissible evidence that several properties were sold prior to May 1, 1973. All of the deeds contained in the record refer to the May 1, 1973 plat. Therefore, we conclude that the District Court did not err when it concluded that the Defendants purchased their lots by reference to the May 1, 1973 plat.

ISSUE 6

¶54.Were the Plaintiffs estopped from claiming the existence of the bridle path easement?

¶55.Defendants assert that the District Court should have found that the Plaintiffs were estopped from claiming the existence of the bridle path because the Plaintiffs silently watched and said nothing as various lot owners constructed obstructions upon the easement. Plaintiffs reply that the Defendants may not, for the first time on appeal, argue

that they are estopped.

¶56.A review of the record reveals that the Defendants raised the issue of estoppel in their Answer and Counterclaim filed February 18, 1997, which states:

AFFIRMATIVE DEFENSES. . . .

18. Plaintiffs' claims are barred by *estoppel*, waiver and laches.

(Emphasis added.) However, in response to the Plaintiffs' motion and brief in support of summary judgment, Defendants' failed to argue or address the affirmative defense of estoppel. As a result, the District Court did not discuss estoppel in its Order and Memorandum granting the Plaintiffs partial summary judgment.

¶57 In *Unified Industries, Inc. v. Easley,* 1998 MT 145, 289 Mont. 255, 961 P.2d 100, we stated:

The general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory. The basis for the general rule is that it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider.

*Unified Industries, Inc., ¶ 15 (citation omitted).*

¶58 Although the Defendants raised the issue of estoppel in their Answer, their failure to argue the defense of estoppel in the face of a summary judgment motion at the District Court level, prohibits the Defendants from raising that issue on appeal. It would be fundamentally unfair for this Court to fault the District Court for failing to rule correctly on the issue of estoppel, when it was not argued by the Defendants in their summary judgment brief. Accordingly, we decline to address this issue.

¶59 We affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ THOMAS C. HONZEL

District Judge, sitting for

Justice W. William Leaphart

Justice Karla M. Gray, dissenting.

¶60.I respectfully dissent from the Court's opinion. I would conclude that the District Court abused its discretion in granting Rule 54(b) certification in this case and remand for further proceedings without addressing the substantive issues raised.

¶61.Rule 54(b), M.R.Civ.P., provides:

When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Because the decision to grant or deny a request for Rule 54(b) certification lies within the discretion of the trial court, we review a grant of Rule 54(b) certification for abuse of discretion. *See Roy v. Niebauer* (1980), 188 Mont. 81, 86, 610 P.2d 1185, 1188. "If a trial court abuses its discretion in certifying an order of summary judgment as final under Rule 54(b), an appellate court is without jurisdiction to entertain the appeal." *Reidy v. Anaconda-Deer Lodge County* (1981), 196 Mont. 127, 130, 637 P.2d 1196, 1197.

¶62.Rule 54(b) certification requires that a court consider several factors:

1. The relationship between the adjudicated and unadjudicated claims.

2. The possibility that the need for review might or might not be mooted by future developments in the district court.

3. The possibility that the reviewing court might be obligated to consider the same issue a second time.

4. The presence or absence of a claim or a counterclaim which could result in a set-off against the judgment sought to be made final.

5. Miscellaneous factors such as delayed economic and solvency considerations, shortening the time of trial, triviality of competing claims, expenses and the like.

*Roy, 188 Mont. at 87, 610 P.2d at 1189.*

¶63.In this case, the appeal originally was filed without Rule 54(b) certification. All parties had filed their initial briefs on appeal by the time this Court ruled that certification of the partial summary judgment was necessary prior to our consideration of the appeal. We remanded to the District Court to allow for certification, expressly refusing to assume that certification would be proper. On remand, the District Court issued a cursory order stating there was no just reason for delay and declaring that its partial summary judgment decision was "a final and appealable Order, for the reasons set forth in VCR's Brief, which the Court hereby adopts as its own." The brief to which the court referred alleged that certification would not require this Court to consider the same issues a second time and that there is no possibility of a set-off because the issues already decided merely resolved a nonmonetary issue of whether the bridle path exists and the counterclaims request monetary damages.

¶64.In the partial summary judgment from which this appeal is taken, the plaintiffs sought and were granted summary judgment on their claims that a bridle path easement exists and that the Association had no authority to abandon it. The plaintiffs did not seek summary judgment on their other two claims, that the Association should be enjoined from attempting to remove the bridle path easement from the final plat of the subdivision, and for attorney fees. None of the parties sought summary judgment on asserted counterclaims.

¶65.In its order for partial summary judgment, the District Court recognized that genuine

issues of material fact exist as to the counterclaims that respondent lot owners Flynn and Dale did not receive constructive notice of the easement and that the easement has been extinguished by adverse possession where it crosses the properties of respondent lot owners New, Webster, and McGuire. Also remaining to be decided are whether the bridle path easement was intended to be wider across certain lots and the common areas, the plaintiffs' claim that an injunction should issue prohibiting the Association from removing the bridle path from the plat without the consent of all landowners, the Association's counterclaims of defamation and slander of title, and the parties' requests to be awarded attorney fees under the covenants.

¶66.Despite the Association's arguments to the contrary in its brief to the District Court, the existence of these remaining issues weighs against Rule 54(b) certification based on at least three factors set forth in *Roy*. First, a clear possibility remains that this Court might be obligated to review some of the same issues a second time--the issue concerning the easement's width will require a revisiting of the issue of to what extent an easement was created, and the injunction claim will require a revisiting of the Association's authority *vis-a-vis* the bridle path easement. Second, claims or counterclaims are present which could result in a nonmonetary "set-off" against the judgment made final through certification--the constructive notice and remaining adverse possession claims may extinguish the easement across those lots. In addition, the number and significance of the remaining claims raises the very real likelihood of a second appeal in this case, resulting in appeal-related expenses of both time and money which, in light of the intertwining factual relationship between the adjudicated and unadjudicated claims, could surely have been reduced had all matters been considered in the usual manner, in one appeal after the entry of final judgment adjudicating all claims.

¶67."Rule 54(b) certifications, and piecemeal litigation, are generally disfavored." *Weinstein v. University of Montana at Missoula* (1995), 271 Mont. 435, 443, 898 P.2d 101, 106. We have cautioned district courts not to certify difficult issues to this Court in order to provide guidance for the remainder of the case. *Weinstein*, 271 Mont. at 442, 898 P.2d at 106. Not only are district courts under a duty to avoid piecemeal litigation and to protect the rights of parties from possible prejudice flowing from a premature appeal, but the parties themselves are also under a duty to inform this Court when a certified appeal has been improvidently granted. *In re Adoption of BGB* (1979), 183 Mont. 347, 357, 599 P.2d 375, 381.

¶68.I would conclude that the District Court abused its discretion in granting Rule 54(b)

certification and, as a result, that we are without jurisdiction to entertain this appeal. *See Reidy*, 196 Mont. at 130, 637 P.2d at 1197. On that basis, I would remand for final adjudication of all issues. I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY

Justice James C. Nelson joins in the foregoing dissenting opinion.

/S/ JAMES C. NELSON