05-035

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 350

QWEST CORPORATION,

      Petitioner and Appellee,

   v.

MONTANA DEPARTMENT OF PUBLIC SERVICE
REGULATION, MONTANA PUBLIC SERVICE
COMMISSION,

      Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 2003-464
Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Monica Tranel, Robin A. McHugh, Special Assistant Attorneys General,
Helena, Montana

      For Appellee:

          John Alke, Hughes, Kellner, Sullivan & Alke, Helena, Montana

Submitted on Briefs:  December 29, 2005

Decided:  December 19, 2007

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Qwest Corporation (Qwest) petitioned the District Court for the First Judicial District, Lewis and Clark County, to review two orders issued by the Montana Public Service Commission (the PSC) requiring Qwest to file information substantiating the accuracy of its rates. The District Court found in Qwest's favor, vacated the PSC's orders and remanded the matter to the PSC. The PSC appeals. We reverse.

¶2 The PSC presents the following issues on appeal:

¶3 1. Whether the PSC's actions were ripe for review by the District Court.

¶4 2. Whether the investigation undertaken by the PSC in this case was subject to review under § 2-4-701, MCA.

¶5 3. Whether the PSC may investigate utilities in any manner necessary to effectuate its statutory duties.

¶6 4. Whether the PSC's investigation of Qwest violated the PSC's administrative rules.

¶7 Because we reverse the decision of the District Court and hold that this case is not ripe for judicial review, we do not address Issue 4 as it is now moot.

**Factual and Procedural Background**

¶8 Qwest is a regulated public utility pursuant to § 69-3-101, MCA. It offers regulated telecommunications services as defined at § 69-3-803, MCA. The PSC is the state agency that administers Montana laws governing rates and services of public utilities operating in Montana, such as Qwest. Pursuant to § 69-3-203, MCA, Qwest

must file an annual report with the PSC containing information about Qwest's annual revenues and earnings.

¶9  On March 14, 2003, PSC issued a "Notice of Investigation" to determine whether the rates charged by Qwest are "reasonable and just" pursuant to § 69-3-201, MCA. The PSC indicated in the notice that revenues earned by Qwest since 2001 may be in excess of its authorized rate of return. Qwest did not respond to the notice. The PSC issued its "Second Notice of Investigation and Request for Information" on April 24, 2003, directing Qwest to state whether its 2001 annual report contained accurate information, and if it did not, directing Qwest to demonstrate why by providing information in a form that would meet the minimum filing requirements contained in Admin. R. M. 38.5.2803 through 38.5.2820.

¶10  Qwest responded to the second notice on May 22, 2003, stating that it could not represent to the PSC that the information contained in its 2001 Annual Report was accurate because Qwest was currently undergoing an external audit. Qwest pointed out that the PSC "seems to seek a specific correlation between [the information in its annual report] and the detailed cost of service information which a party seeking a rate change would file in compliance with the [PSC's] minimum filing standards." Qwest also pointed out that using 2001 financial data to prepare a rate case filing for 2003 violated the PSC's own administrative rules establishing rate case filing requirements.

¶11  On June 16, 2003, the PSC issued its Order No. 6493 directing Qwest to submit the information requested for the PSC's investigation. In response, Qwest filed a Motion for Reconsideration stating that the PSC's order was unlawful because Qwest's current

3

rates were established by previous orders of the PSC and were, therefore, prima facie lawful; because the PSC had the burden to prove that Qwest's rates were unjust and unreasonable and the investigation attempted to shift that burden to Qwest; and because ordering Qwest to use 2001 financial data in a 2003 rate case violated the PSC's own administrative rules. The PSC denied Qwest's Motion for Reconsideration in its Order No. 6493a issued July 10, 2003.

¶12 On August 6, 2003, Qwest petitioned for judicial review under § 2-4-701, MCA (Cause No. CDV 2003-464). In its petition, Qwest asserted that its current rates had previously been approved by the PSC and that the PSC's orders unlawfully required Qwest to file a rate case reproving the reasonableness of its existing rates. Qwest also asserted that the PSC's investigation was an unlawful attempt to shift the burden of proof in the rate case to Qwest. That same day, the PSC filed a complaint in the District Court seeking to compel Qwest's compliance and requesting that the court assess civil fines and penalties against Qwest for failing to comply with the PSC's orders (Cause No. BDV 2003-465).

¶13 The PSC moved to consolidate the actions and Qwest moved to stay BDV 2003-465 (the PSC's complaint proceeding) pending the outcome of CDV 2003-464 (the proceeding on Qwest's petition for judicial review). The District Court denied the PSC's motion to consolidate and granted Qwest's motion for a stay of the PSC's complaint proceeding pending resolution of Qwest's petition for judicial review.

¶14 In a Memorandum and Order issued October 14, 2004, the District Court determined that the issues presented were ripe for review. The court also determined that

4

the PSC's orders unlawfully imposed a rate case filing requirement upon Qwest in violation of Montana statute and the PSC's own administrative rules. The District Court remanded to the PSC and the PSC appeals.

**Standard of Review**

¶15 When reviewing an agency decision, we apply the same standard as did the district court. *Montana Power Co. v. Public Service Com'n*, 2001 MT 102, ¶ 18, 305 Mont. 260, ¶ 18, 26 P.3d 91, ¶ 18 (citing *Synek v. State Compensation Ins. Fund*, 272 Mont. 246, 250, 900 P.2d 884, 886 (1995)). Under § 2-4-704(2), MCA, a reviewing court:

> may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
> (a) the administrative findings, inferences, conclusions, or decisions are:
> (i) in violation of constitutional or statutory provisions;
> (ii) in excess of the statutory authority of the agency;
> (iii) made upon unlawful procedure;
> (iv) affected by other error of law;
> (v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
> (vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion . . . .

In addition, questions of law are reviewed to determine if the agency's interpretation of the law is correct. *Ruby Mountain Trust v. DOR*, 2000 MT 166, ¶ 13, 300 Mont. 297, ¶ 13, 3 P.3d 654, ¶ 13 (citing *Steer, Inc. v. Department. of Revenue*, 245 Mont. 470, 474, 803 P.2d 601, 603 (1990)).

**Issue 1.**

¶16 *Whether the PSC's actions were ripe for review by the District Court.*

5

¶17　The PSC asserts that the District Court adjudicated issues that the PSC neither decided at the agency level nor argued to the District Court. Hence, the PSC argues that the issues adjudicated by the court were not ripe for review.

¶18　Qwest argues on the other hand that the PSC's orders are orders of compulsion, issued in a contested case proceeding which the District Court determined violated Montana law. Qwest asserts that the legal issues raised by the orders are not hypothetical or abstract as the PSC has already filed an original action in the District Court against Qwest seeking to enforce the challenged orders through mandatory injunction and the imposition of civil fines. Consequently, Qwest argues that because it has no other adequate remedy, the PSC's orders are ripe for review.

¶19　The ripeness doctrine is "a principle of law, grounded in the federal constitution as well as in judicial prudence, that requires an actual, present controversy, and therefore a court will not act when the legal issue raised is only hypothetical or the existence of a controversy merely speculative." *Montana Power Co.*, ¶ 32 (citing *Pearson v. Virginia City Ranches Ass'n*, 2000 MT 12, ¶ 30, 298 Mont. 52, ¶ 30, 993 P.2d 688, ¶ 30; *Portman v. County of Santa Clara*, 995 F.2d 898, 902-03 (9th Cir. 1993)). "[T]he ripeness requirement is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " *Ohio Forestry Association v. Sierra Club*, 523 U.S. 726, 732-33, 118 S. Ct.

1665, 1670 (1998) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 1515 (1967)).

¶20     Furthermore, in deciding whether an agency's decision is ripe for judicial review, it is necessary to examine "both the 'fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.' " *Ohio Forestry*, 523 U.S. at 733, 118 S. Ct. at 1670.  Thus, a reviewing court "must consider: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry*, 523 U.S. at 733, 118 S. Ct. at 1670.

¶21     Applying these three factors from *Ohio Forestry* to the present case, we conclude that the PSC's actions are not ripe for review.  First, Qwest would not suffer any hardship if judicial review is not taken at this juncture.  Contrary to Qwest's assertions, the PSC did not demand that a rate case be initiated.  The PSC was simply seeking information as to the accuracy of Qwest's 2001 annual report.  Qwest is obligated to provide the information requested and nothing more.  What the PSC *might* do with the information requested from Qwest is not an appropriate matter for review.  An agency's decision is not ripe for review if no legal consequences, rights or duties flow from an agency's actions because those actions are merely a step that could lead to a recommended change of the status quo.  *Ecology Center v. United States Forest Service*, 192 F.3d 922, 925 (9th Cir. 1999); *see also Western Seafood Co. v. City of Freeport*, 346 F. Supp. 2d 892, 902-03 (S.D. Tex. 2004) (holding that administrative agency's application for a permit to

7

develop a marina not ripe for review because claim of harm was only speculative that permit might be used in the future to accomplish an unlawful purpose).

¶22 Moreover, judicial review of a preliminary step that has no binding legal consequences is not available even where the initiation of proceedings is serious and may have severe consequences. *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 600, 70 S. Ct. 870, 873 (1950). In order to be final and thereby subject to review, agency action must mark "the consummation" of the agency's decision making process. *Whitman v. American Trucking Associations,* 531 U.S. 457, 478, 121 S. Ct. 903, 915 (2001) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78, 117 S. Ct. 1154, 1168 (1997)).

¶23 In the present case, there are no irremediable adverse consequences that flow from the PSC's investigation, thus we conclude that delayed judicial review will not cause a hardship to Qwest.

¶24 Second, judicial intervention at this juncture would inappropriately interfere with further administrative action by the PSC. One of the basic purposes of the PSC is to investigate public utilities, however, an investigation is not a final agency action. While the PSC could do several things with the information it requested, including negotiating with Qwest to reach a mutually agreeable solution; initiating a contested case proceeding; or simply doing nothing, it is not appropriate for courts to speculate on future actions or to interfere with the process of obtaining the information. When premature review would deny an agency the opportunity to apply its expertise, courts should decline review. *Ohio Forestry*, 523 U.S. at 735, 118 S. Ct. at 1671. Thus, we conclude that judicial

8

interference at this investigatory stage would frustrate the PSC's ability to review the information and to make decisions about the best possible course of action.

¶25   Third, there is no specific factual record before this Court. The only action taken by the PSC was an initiation of an investigation, yet the District Court reviewed issues on which the PSC had not rendered any decision. Judicial appraisal of agency action stands on surer footing when it takes place in the context of a specific factual record. *Toilet Goods Association v. Gardner*, 387 U.S 158, 164, 87 S. Ct. 1520, 1524 (1967). Moreover, depending on the PSC's actions, review in this case may turn out to be unnecessary. Certainly both the District Court and this Court would benefit from further factual development of the issues presented.

¶26   Accordingly, we hold that the PSC's actions were not ripe for review by the District Court.

### Issue 2.

¶27   *Whether the investigation undertaken by the PSC in this case was subject to review under § 2-4-701, MCA.*

¶28   Section 2-4-701, MCA, provides:

> **Immediate review of agency action.** A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

¶29   The PSC argues on appeal that the District Court's review of this action under § 2-4-701, MCA, was erroneous because the PSC's request for information was not necessarily a prelude to further action by the PSC. In addition, the PSC contends that, even if a final agency action were pending, the District Court erred by not making any

9

findings that review of a final decision would not provide Qwest with an adequate remedy.

¶30 Review under § 2-4-701, MCA, is available when a determination is made that a final agency decision will not provide an adequate remedy justifying immediate review. *Shoemaker v. Denke,* 2004 MT 11, ¶ 30, 319 Mont. 238, ¶ 30, 84 P.3d 4, ¶ 30 (citing *Gilpin v. State*, 249 Mont. 37, 39, 812 P.2d 1265, 1266-67 (1991)). When an agency has not adjudicated the issues raised on appeal, there is no final agency action upon which a district court can assume jurisdiction. *Marble v. Dept. of Health & Human Serv.*, 2000 MT 240, ¶ 28, 301 Mont. 373, ¶ 28, 9 P.3d 617, ¶ 28.

¶31 Qwest's justification for seeking intermediate review under § 2-4-701, MCA, was that if it did not challenge the lawfulness of the PSC's orders, Qwest would eventually suffer harm. However, Qwest did not allege any concrete harm. Instead, Qwest's allegation of harm presumes a rate case that would reduce Qwest's rates. According to the PSC, this potential financial harm would actually correct a situation in which Qwest is collecting revenues above what it is authorized to collect and would not actually "harm" Qwest.

¶32 Judicial review under § 2-4-701, MCA, is not justified where the only allegation of harm is speculation that further agency action *may* take place, and *if* it takes place, it *may* have legal consequences. Courts may intervene in agency process only when a specific final agency action has an actual or immediately threatened effect. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 894, 110 S. Ct. 3177, 3191 (1990) (citing *Toilet Goods*, 387 U.S. at 164-66, 87 S. Ct. at 1524-26).

¶33 Accordingly, we hold that the investigation undertaken by the PSC in this case was not subject to review under § 2-4-701, MCA.

**Issue 3.**

¶34 *Whether the PSC may investigate utilities in any manner necessary to effectuate its statutory duties.*

¶35 The District Court concluded that although the PSC possesses the power to request information from Qwest, it may not force Qwest to do so "in this manner," i.e., by requiring Qwest to provide information "in the form that would meet the minimum filing requirements contained in ARM 38.5.2803 through 38.5.2820." The court determined that § 69-3-110(2), MCA, establishes that Qwest's rates are prima facie lawful and any party that wishes to challenge the existing rates must carry the burden of proof. Here, the court concluded that the PSC's orders were unlawful because they attempted to reverse the burden of proof. The District Court stated that "[i]f the PSC desires to show Qwest's rates are unjust and unreasonable, *the PSC may collect the information it needs* and carry its burden forward" (emphasis added). However, that is precisely what the PSC is trying to do in this case, "collect the information it needs."

¶36 The PSC argues that the District Court's conclusions that the PSC may not ask for information from Qwest "in this manner" is premised on the court's acceptance of Qwest's argument that by requiring Qwest to provide the information in the form that would meet the minimum filing requirements contained in Admin. R. M. 38.5.2803 through 38.5.2820, the PSC was forcing Qwest to file a rate case, and that the PSC intended to use the information in a manner that would be unlawful.

11

¶37    Qwest is reading too much into the PSC's request.  While the cited rules are entitled "Minimum Rate Case Filing Requirements for Telephone Utilities," that does not mean that because the PSC ordered Qwest to file *information* in conformity with those rules, the PSC was forcing Qwest to file a rate case.  On the contrary, the PSC's enabling statutes authorize the PSC to obtain information from utilities in any manner necessary to perform its duties.  To that end, § 69-3-106(1), MCA, provides:

> The [PSC] shall have authority to inquire into the management of the business of all public utilities, shall keep itself informed as to the manner and method in which the same is conducted, and *shall have the right to obtain from any public utility all necessary information to enable the [PSC] to perform its duties.*  [Emphasis added.]

And, § 69-3-203(2), MCA, provides:

> The [annual] reports must be in the form prescribed by the [PSC] and must contain all the information that the [PSC] considers necessary for the proper performance of its duties.  *The [PSC] may at any time request information omitted from the reports or not provided for in the reports whenever, in the judgment of the [PSC], the information is necessary.* [Emphasis added.]

¶38    Moreover, this Court has stated that administrative agencies have broad investigatory power in Montana and an agency should not be denied access to information necessary to perform its statutory investigative duties.  *Montana Human Rights Div. v. City of Billings*, 199 Mont. 434, 444-45, 649 P.2d 1283, 1288-89 (1982).

¶39    Accordingly, we hold that the PSC's statutory duty to investigate utilities may not be hindered by limiting its ability to obtain information in a specific manner.

¶40    Reversed.

12

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE