No. 96-556

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


TUNGSTEN HOLDINGS, INC.,

Plaintiff and Appellant,

v.

MARIE PARKER,

Defendant and Respondent.


APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Michael C. Prezeau, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Scott B. Spencer, Attorney at Law, Libby, Montana

For Respondent:

William A. Douglas; Douglas Law Firm, Libby, Montana


Submitted on Briefs: April 10, 1997

Decided:   May 6, 1997
Filed:


_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.


     Tungsten Holdings, Inc. (Tungsten) filed a "Complaint for Declaratory Judgment and Quiet Title" seeking to quiet title to a parcel of property owned by Marie Parker, or in the alternative, for declaration that Tungsten had the right to an easement for purposes of ingress and egress across the disputed property.  The matter was tried to the District Court sitting without a jury and, after having personally viewed the property in the presence of the parties, the District Court entered findings of fact, conclusions of law and

an order denying Tungsten's prayer for judgment quieting title and also denying Tungsten's claim of right of easement to use the property in question for ingress and egress. We affirm.

Tungsten does not challenge the District Court's findings of fact but does contend that the District Court erred in its conclusions of law.

The following facts, which are undisputed, are excerpted from the District Court's findings of fact:

1. Tungsten and Parker each own real estate along the banks of Warland Creek, a drainage located in Lincoln County, [Montana] approximately 25 miles north of Libby near the Lake Koocanusa Reservoir.

2. Tungsten owns two separate parcels, lot 21, consisting of approximately 10 acres, and lots 27 and 28, consisting in total of approximately 22 acres. Lot 21 is separated from lots 27 and 28 by Parker's property to the south, and by Forest Service property to the north. . . . [T]he distance between lot 21 and lots 27 and 28 is approximately 1500 feet. Parker's property spans this entire distance.

3. Tungsten's property and Parker's property are located within a bizarrely divided tract of land known as "the McAlmond Claim." The first recorded plat for the McAlmond Claim is dated May 12, 1967.

4. Several amended plats for the McAlmond Claim were recorded since the original, the most recent of which was recorded with the Lincoln County Clerk and Recorder on October 23, 1968. The 1968 plat, identified as plat 1453, shows a serpentine lot, 40 feet wide and approximately 2700 feet in length, consisting of 2.695 acres, extending from the eastern boundary of lot 21 to the western boundary of the McAlmond Claim. This parcel, identified as lot 34 of the McAlmond Claim, traverses the entire northern boundary of Parker's property and serves as a boundary between property to the north and property to the south of lot 34. None of the plats recorded prior to the 1968 plat showed lot 34 or anything which resembles a roadway in the location now occupied by lot 34.

5. On August 5, 1992, Parker obtained title to lot 34 of the McAlmond Claim by Tax Deed, and since that date, she has been the record owner of lot 34. A notation on the tax deed for lot 34 contains the word "ROAD" in the property description. . . .

6. Neither the deed by which lots 27 and 28 were conveyed to Tungsten in 1993, nor any of the previous deeds by which those parcels were transferred to Tungsten's predecessors in interest, reference the existence of a roadway. All of the deeds by which lots 27 and 28 were conveyed to Tungsten and its predecessors in interest reference various plats on record with the Lincoln County Clerk and Recorder. None of the plats referenced in the deeds conveying lots 27 and 28 mention the existence of a road where lot 34 is located.

Although there is nothing in the 1968 amended plat which specifically identifies lot 34 as a roadway, the District Court found that it was clear that lot 34 was intended to be a roadway. The court stated, "[t]here is no other conceivable purpose a parcel of this configuration (a meandering 40' wide strip of land extending some 2700') could reasonably serve. Furthermore, without a roadway at this location, a number of lots, not just lots 27 and 28, would be landlocked and inaccessible."

The court further found that lot 34 generally follows along a creek bottom, and while it is badly overgrown with brush and small trees, it shows some evidence of prior

usage as a roadway at some point in the distant past. Who used the road and when it was used is unknown. It is unclear if lot 34 could have been a usable roadway in 1968, when plat 1453 was filed. If lot 34 were used as a road as recently as 1968, it would have had to have been an unimproved roadway by today's standards. Lot 34 is unusable as a roadway in its current condition and would require extensive improvement in order to be made usable as a roadway.

Tungsten purchased lots 27 and 28 in 1993. There is no evidence that Tungsten or any of its predecessors in interest ever used lot 34 to access lots 27 and 28. Further, there is no evidence that lot 34 was ever created or dedicated as a county roadway or that it was used by the general public.

## DISCUSSION

The District Court held, and Tungsten does not dispute, that the fact that Parker's tax deed for lot 34 contains the notation "ROAD" in the property description does not, by itself, make lot 34 a dedicated roadway or create access for use of lot 34 as a roadway. Rather, Tungsten argues that lot 34 is a dedicated roadway created by the filing of plat 1453 in the year 1968. Tungsten argues that the filing of plat 1453 constituted a dedication of lot 34 as a road. While the District Court found that it is reasonably clear that lot 34 was intended by the developers of the McAlmond Claim to serve as a roadway, we agree with the District Court that there is no evidence that lot 34 was ever dedicated or used as a roadway. Rather, lot 34 is identified as a separate parcel of property, the title to which was legally acquired by Parker.

An easement by reservation must arise from the written documents of conveyance. Ruana v. Grigonis (1996), 275 Mont. 441, 447, 913 P.2d 1247, 1251. Deeds which reference plats are deemed to convey all easements which are established by the recording of the plat. Ruana, 913 P.2d at 1253.

Plat 1453 is the only plat showing lot 34 and this plat does not identify or dedicate lot 34 as being a road. Neither the deed nor the plat reference the existence of a road easement. The mere fact that lot 34's long and narrow configuration gives it the appearance of a roadway or that the developers may have intended it as roadway is not sufficient. Easements by reservation must be created or reserved in writing. Tungsten can point to no deed or plat which contains any language dedicating or identifying lot 34 as a roadway.

The District Court's conclusions of law are correct. The Order of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE
/S/ JAMES C. NELSON
/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER