JUSTICE NELSON,
dissenting.
¶38 I dissent. While the Court recites the correct standards for creating an easement under our easement-by-reference doctrine (see Opinion, ¶¶ 19-21), I believe the Court misapplies those standards in the present case.
¶39 It is a fundamental tenet of property law that an intention to convey or create a particular interest in real property must be clearly expressed in writing (except where the interest arises by operation of law, which is not the case here). Blazer v. Wall, 2008 MT 145, ¶ 69, 343 Mont. 173, 183 P.3d 84; § 70-20-101, MCA. Typically, a seller of land grants or reserves an easement by the use of express words, such as “The Seller hereby reserves an easement 30 feet in width along the northern boundary of the Buyer’s property for purposes of ingress to and egress from the Seller’s retained property identified as follows ....” See § 70-20-103, MCA. Our easement-by-reference doctrine, however, is premised on the notion that a seller may express her intent to grant or reserve an easement through the use of a depiction on a plat or certificate of survey referenced in the instrument of conveyance. We have emphasized, though, that the intent to create an easement burdening particular property for the benefit of another must be “clearly and unmistakably communicated.” Blazer, ¶ 43; Broadwater Development, LLC v. Nelson, 2009 MT 317, ¶ 27, 352 Mont. 401, 219 P.3d 492.
¶40 In this regard, even though it may appear from the referenced plat or certificate of survey that the seller intended to create some sort of easement, the critical issue is whether the seller actually accomplished that result under the law. In point of fact, a seller must comply with certain requirements for establishing an easement. Indeed, that was the primary point of our decisions in Blazer and Tungsten Holdings, Inc. v. Parker, 282 Mont. 387, 938 P.2d 641 (1997). In Blazer, the certificate of survey depicted a strip labeled “30' EASEMENT ROAD,” which indicated an intent to create a 30-foot-wide easement road. The problem was that the use or necessity of the *241 open-ended road and the intended dominant and servient tenements were not ascertainable with reasonable certainty from the certificate of survey. Accordingly, the depiction failed to create the purported easement. See Blazer, ¶¶ 54, 57, 75. Likewise, in Tungsten Holdings, the plat depicted a meandering strip of land 40 feet wide and approximately 2,700 feet long, which was identified as “lot 34.” This parcel resembled a roadway, and the district court found that there was “no other conceivable purpose” a parcel of this configuration could reasonably serve. The court also found that without a roadway in this location, a number of lots would be landlocked and inaccessible. Notably, the tax deed for lot 34 contained the notation “ROAD” in the property description. Nevertheless, this Court, speaking through Justice Leaphart, held unanimously that the mere fact that a depiction on a plat may appear to be a roadway, or that the developers may have intended it to be a roadway, is simply not sufficient to establish the easement. The developers had to express this intent in writing. Tungsten Holdings, 282 Mont. at 390, 938 P.2d at 642-43. Thus, in both cases, we held that whatever the sellers or developers may have intended, their depictions were inadequate to establish a valid and enforceable easement because the depictions did not adequately impart the requisite information for creating an easement.
¶41 To create an express easement, the documents of conveyance must identify the grantor and the grantee, adequately describe what is being conveyed, contain language of conveyance, and be signed. Broadwater Development, ¶ 27. Focusing on the second of these requirements, a property description is a necessary inclusion in the instrument conveying title so that the extent of the claim to the property may be determined. Halverson v. Turner, 268 Mont. 168, 172, 885 P.2d 1285, 1288 (1994). Consequently, an inadequate or defective property description is ineffective to create or transfer a property interest. Blazer, ¶¶ 70-71. Under our easement-by-reference doctrine specifically, a property description is inadequate (and thus ineffective) if an individual examining the referenced plat or certificate of survey cannot ascertain, with reasonable certainty, (1) the identities of the dominant and servient tenements (i.e., what property the depicted easement benefits and what property it burdens), and (2) what the easement’s use or its necessity is. Broadwater Development, ¶ 38. We agreed unanimously in Blazer that these two requirements must be satisfied in order to create the easement. See Blazer, ¶¶ 51,67 (opinion of the Court); Blazer, ¶ 80 (dissenting opinion) (“The Court correctly determines that an easement-by-reference fails if it does not depict and *242 identify both the dominant and servient tenements, as we have held repeatedly that ‘it is necessary that the grantee of the property being burdened by the servitude have knowledge of its use or its necessity.’ ”). Neither of these requirements is satisfied in the present case.
¶42 First, as to the identity of the dominant tenement, the Court relies on Benson v. Pyfer, 240 Mont. 175, 783 P.2d 923 (1989), and Pearson v. Virginia City Ranches Assn., 2000 MT 12, 298 Mont. 52, 993 P.2d 688, for the proposition that the alleged building restriction on Lot 7 was “created for the benefit of all of the lot owners.” Opinion, ¶ 30. The issue in Benson, however, concerned the installation of water and sewer facilities and paved streets, and there was no dispute that these were intended for the benefit of all lots in the subdivision. Likewise, Pearson concerned a bridle path easement crossing the subdivision, and we had no difficulty in determining from the depiction on the plat that this easement was intended for the use of all lot owners. But the same clear intent is not shown on the Redgate Vista plat, which simply depicts a line across Lot 7 labeled “Building restriction line”:
[Publisher’s Note: Please see plat on page 247]
There is no indication on the plat as to what property or properties this restriction was intended to benefit-perhaps one or more subdivision lots, or maybe a neighboring property outside the subdivision. Nevertheless, the Court opines that in drawing the line across Lot 7, the developer intended one thing, and one thing only: to create legally enforceable rights in all other lot owners within Redgate Vista subdivision. Opinion, ¶ 30. However, if that is what was intended, I cannot agree that it is conveyed clearly and unmistakably on the plat. Blazer, ¶ 43.
¶43 The Court suggests that we should treat the building restriction line no differently than improvements such as parks and open areas because the purpose of § 76-3-304, MCA, is “to ensure that purchasers of the properties in the subdivision essentially get what they pay for.” Opinion, ¶ 30. But this statement assumes the very issue we are deciding: Did the purchasers of Redgate Vista lots pay for an easement on Lot 7? Or, more to the point, did the developer intend to create legally enforceable rights in the subdivision lot owners concerning the use of Lot 7? In this regard, the Court’s attempted analogy between the building restriction line and parks, open areas, and bridle path easements is unavailing. The intent to benefit all subdivision lot owners is reasonably clear where a park, an open area, or a bridle path easement is shown on a subdivision plat, but the same cannot be said *243 of a single building restriction line drawn across one of the subdivision lots as in this case. For these reasons, I would hold that the identity of the dominant tenement is not ascertainable with reasonable certainty from the plat.
¶44 Turning to the identity of the servient tenement, we likewise lack necessary information. In particular, we do not know from the plat which side of the line the building restriction applies to. The line is labeled “Building restriction line” with an arrow pointing to the line, as follows:
[[Image here]]
The Court repeatedly assumes-without any analysis-that because the label “Building restriction line” is on the left (west) side of the line, the restriction must apply to that side of Lot 7. But the Court has no basis for making this assumption. In fact, the Court manufactures this rule from whole cloth. We have been provided with no evidence whatsoever that surveyors actually follow such a rule when drafting plats and certificates of survey. Cf. Our Lady of the Rockies, Inc. v. Peterson, 2008 MT 110, ¶ 32, 342 Mont. 393, 181 P.3d 631 (referring to the 1890 Manual of Surveying Instructions for the Survey of the Public Lands of the United States and Private Land Claims, provided by the parties *244 in that case, for purposes of interpreting the survey at issue). We have been given no guidance at all (not even in the form of an amicus curiae brief from a trade group or association) regarding the rules, customs, or practices, if any, that surveyors follow with regard to the positioning of labels on plats and certificates of surveys and whether the location of a line’s label determines where a legally enforceable burden exists. What we have done, therefore, oblivious to the potential inaccuracy of our conclusion and to the utter absence of any supporting authority, is announce a rule that when the word “restriction” appears on a particular side of a line on a plat or certificate of survey, with an arrow pointing to that line, the restriction necessarily and only applies on that side of the line. I have no idea whether that was the practice followed by surveyors in 1973 when the Redgate Vista plat was created, and I have no idea whether that is the practice followed by surveyors today. What I do know is that our decision sets a dangerous precedent that may result in the creation or invalidation of untold easements based on this Court’s new interpretational rule for which, as noted, there is neither any cited authority nor any foundation in the record.
¶45 Furthermore, even assuming, for the sake of argument, that there was a practice among surveyors in 1973 regarding the placement of line labels, how would an individual looking at the Redgate Vista plat know that? The Court suggests that the plat put Miller on “inquiry notice” and that she therefore had the responsibility “to conduct an official inquiry into the extent of the negative easement.” Opinion, ¶ 28. Of course, it is axiomatic that a person need not inquire into the extent of an easement unless the easement is first determined to be valid, and an ambiguous or nebulous line drawn on a plat or certificate of survey does not constitute a valid easement. See Blazer, ¶¶ 57-67; Tungsten Holdings, 282 Mont. at 390, 938 P.2d at 642-43. Moreover, it is not clear what the Court means by an “official inquiry” (as opposed to an “unofficial” one) and to whom the “official inquiry” would be directed. But, in any event, the only inquiry Miller was required by law to conduct (official or otherwise) was to examine the public records. Recall that the notice provisions of the recording statutes are designed to enable a prospective purchaser to determine what kind of title he or she is obtaining without having to search beyond public records. Blazer, ¶ 73. Miller was not required to track down extrinsic evidence about the meaning of the line over Lot 7. See Blazer, ¶ 71 (extrinsic evidence may not be admitted to complete a defective property description or to show the intention with which it was made). The *245 documents of conveyance must impart the necessary information themselves, not only to satisfy the statute of frauds (§ 70-20-101, MCA), but also because “[g]ood-faith purchasers of real property . . . are entitled to rely on publicly recorded deeds, plats, and certificates of survey pertaining to the subject property to disclose accurately all encumbrances, easements, and impediments thereon.” Blazer, ¶ 74. Thus, the validity of the easement depends on the adequacy of the depiction on the Redgate Vista plat itself; Miller had to go no further. And examining that plat, nothing on it enables a purchaser of Lot 7 to ascertain with reasonable certainty which side of the lot the building restriction applies to. Thus, the intent to create the restriction was not accomplished according to the requirements of law, and the negative easement fails.
¶46 In addition to the plat’s failure to identify adequately the intended dominant and servient tenements, the use or necessity of the building restriction is also not ascertainable with reasonable certainty from the plat. Indeed, although the Court claims that “Building restriction line” has “only [one] interpretation,” Opinion, ¶ 29, the fact is that the term is patently ambiguous. In fact, the Court’s own analysis reflects this. Initially, the Court interprets “building” as a noun that prohibits the construction of any structures, but then the Court interprets “building” as a verb that prohibits the activity of building anything, including homes, fences, and dog runs. Opinion, ¶ 29.
¶47 In point of fact, a person examining the Redgate Vista plat simply cannot know whether “building restriction” is a prohibition on “buildings,” a prohibition on the activity of “building,” a restriction on height or type, or some other restriction. Perhaps a one-story structure is okay but a multi-story structure is not. What about a garage, or a shed, or a playhouse? Are things like fences, retaining walls, and wells permissible in the restricted area? What about landscaping? Can one install a jungle gym, or abrickbarbeque, or a sandbox, or underground utilities?
¶48 There are countless plausible interpretations of the term “building restriction.” Yet, in order to create a valid and enforceable negative easement, the law specifically requires the seller to express his intent clearly and unmistakably in the documents of conveyance, so that the purchaser of the servient property is given knowledge of the easement’s use or its necessity and does not have to resort to her “common sense,” subjective judgment, or inferences as to what the seller intended. Blazer, ¶¶ 51, 54; Halverson, 268 Mont. at 172, 885 P.2d at 1288; Ruana v. Grigonis, 275 Mont. 441, 447, 913 P.2d 1247, *246 1251 (1996). The reason for this requirement is obvious: The purchaser has a right to know-again, without having to rely on “common sense” or guesswork-the precise nature and extent of the burden imposed on her property. Here, the developer’s intent regarding the use or necessity of the “Building restriction line” is not clearly and unmistakably expressed on the Redgate Vista plat-the Court’s seemingly confident pronouncements about what the developer meant notwithstanding. Because the building restriction’s use or necessity is not described adequately on the plat, the intent to create the restriction was not accomplished according to the requirements of law and the negative easement fails.
¶49 In sum, the “Building restriction line” on the Redgate Vista plat is ambiguous. As with the depictions in Blazer and Tungsten Holdings, the intended use or necessity of the alleged easement and the intended dominant and servient tenements are not ascertainable with reasonable certainty. The Court’s contrary conclusion rests on sheer conjecture about what the developers intended and an interpretational rule that lacks any authority or foundation in the record. Where the requirements of the law are not met, as is the case here, the purported easement fails. I would reverse the District Court’s decision.
¶50 I dissent.
JUSTICES COTTER and RICE join in the Dissent of JUSTICE NELSON.
*247 [[Image here]]